**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Jefferson-Pilot Life Insurance
Company, a North Carolina
corporation,

            Plaintiff,

    v.

Marietta Campbell Insurance Group,
LLC, a Minnesota limited liability
corporation, and Tom Campbell, as
executor of the Estate of Marietta
Campbell,

            Defendants.

Marietta Campbell Insurance Group,
LLC,

            Plaintiff,

    v.

Jefferson-Pilot Life Insurance Co.,

            Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civ. No. 07-1359 ADM/RLE


Civ. No. 07-4534 ADM/RLE

_____

Stephen C. Baker, Esq., and James S. Bainbridge, Esq., Drinker Biddle & Reath LLP,
Philadelphia, PA, and Shane H. Anderson, Esq., Mackall, Crouse & Moore, PLC, Minneapolis,
MN, argued on behalf of Jefferson-Pilot Life Insurance Co.

Robert J. King., Esq., and Ronald L. Haskvitz, Esq., Lommen, Abdo, Cole, King & Stageberg,
P.A., Minneapolis, MN, argued on behalf of Marietta Campbell Insurance Group, LLC, and Tom
Campbell, as executor of the Estate of Marietta Campbell.

_____

# I. INTRODUCTION

On May 15, 2008, the undersigned United States District Judge heard argument on Marietta Campbell Insurance Group, LLC ("MCIG"), and Tom Campbell's Motion for Summary Judgment [Civ. No. 07-1359 Docket No. 64; Civ. No. 07-4534 Docket No. 40], and on Jefferson-Pilot Life Insurance Co.'s ("Jefferson-Pilot") Objection [Civ. No. 07-1359 Docket No. 80; Civ. No. 07-4534 Docket No. 55] to Chief Magistrate Judge Raymond L. Erickson's April 10, 2008, Order [Civ. No. 07-1359 Docket No. 75; Civ. No. 07-4534 Docket No. 54].  For the reasons set forth below, MCIG and Tom Campbell's Motion is denied and Jefferson-Pilot's Objection is overruled.

# II. BACKGROUND[1]

## A.    Marietta Campbell's Life Insurance Policies

### 1.    The Purchase of $14 Million of Insurance on the Life of Marietta Campbell

This dispute arises from Jefferson-Pilot's rescission of an insurance policy on the life of Marietta Campbell because of alleged misrepresentations in her application for insurance. Marietta Campbell, her husband Paul, and their sons Tom, Bill, and Greg, owned a farming business known as Tri-Campbell Farms, a trucking business known as Tri-Campbell, LLC, and a produce brokerage company known as Tri-Campbell, Inc. (collectively, the "Tri-Campbell Entities").  T. Campbell Dep. (Anderson Aff. [Docket No. 74])[2] at 7-8.  The Tri-Campbell Entities operate in North Dakota.  By the spring of 2005, Paul and Marietta Campbell were no

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

[2] Hereinafter, all docket references are to Civil No. 07-1359 unless otherwise specified.

longer actively involved in managing the Tri-Campbell Entities.  Marietta Campbell turned

seventy-nine years old in July 2005.  Anderson Aff. Ex. 67 at JP200044.

In the years preceding 2005, Tom and Bill Campbell discussed purchasing life insurance

on their mother's life.  T. Campbell Dep. at 9-10.  The purpose of the life insurance would be to

benefit Tri-Campbell Farms.  Id. at 61.  Tom and Bill Campbell discussed life insurance with

Clay Swanson, a long-time friend who ran a farming operation with his brothers Blake and Bart

Swanson.  Id. at 9-10.  Clay Swanson arranged for Tom and Bill Campbell to contact Michael J.

Antonello ("Antonello"), an insurance agent in Minnesota.  C. Swanson Dep. (Anderson Aff. Ex.

6; King Aff. [Docket No. 77] Ex. G) at 20.  Antonello had previously assisted Clay Swanson and

his brothers in obtaining life insurance policies on their mother's life, and selling the policies to

outside investors.  Id. at 17-18.  The proceeds from the sale of the policies went to a limited

liability company—the "Wilma Swanson, LLC"—the Swanson brothers had established with

Antonello's assistance.  Id.

In the spring of 2005, Tom Campbell began discussions with Antonello about obtaining

life insurance on Marietta Campbell.  Antonello Dep. (Haskvitz Aff. [Docket No. 67] Ex. 2;

Anderson Aff. Exs. 1-2; King Aff. Ex. E) at 32.  Jefferson-Pilot had contractually authorized

Antonello to act as Jefferson-Pilot's agent in soliciting life insurance applications.  Anderson

Aff. Ex. 23.  Antonello had similar contracts with other life insurance companies.  After talking

with Tom Campbell, Antonello sent the Campbells a preliminary inquiry form for information

about Marietta Campbell.  Haskvitz Aff. Ex. 5.  Tom Campbell faxed the completed form to

Antonello on June 2, 2005.  Id.; T. Campbell Dep. at 25.

Tom Campbell and Antonello initially discussed obtaining a total of $6 million in benefits payable on Marietta Campbell's death.  T. Campbell Dep. at 61; Antonello Dep. at 35. In June 2005, Antonello sent the Campbells applications for life insurance from various companies.  Antonello Dep. at 32.  On June 27, 2005, Marietta Campbell signed and dated blank applications for life insurance from Jefferson-Pilot, American General Life Insurance Company ("AIG"), Hartford Life and Annuity Insurance Company ("Hartford"), and Allianz Life Insurance Company of North America ("Allianz").  Haskvitz Aff. Ex. 7; Anderson Aff. Exs. 28, 86; Antonello Dep. at 42.  Tom Campbell sent the signed applications to Antonello's office.

Sometime between June 27, 2005, and July 13, 2005, Antonello spoke by phone with Tom Campbell and Marietta Campbell to elicit the information necessary to complete the life insurance applications.  T. Campbell Dep. at 29-30.  By July 13, 2005, Antonello and Matthew Schafer ("Schafer"), who was Antonello's assistant, completed the Jefferson-Pilot and AIG applications.  Antonello Dep. at 42; Schafer Dep. at 9, 123.

The Jefferson-Pilot application on the life of Marietta Campbell, as completed by Antonello and Schafer, sought $3 million in life insurance, and listed Marietta Campbell as the owner of the policy and her estate as the sole beneficiary.  Haskvitz Aff. Ex. 6 at JP000003-000004.  Question sixty of the application asked: "Do you have any applications pending with any other life insurance company now?"  Id. at JP000005.  Schafer checked the box for "yes" and explained: "Also Applied American General Life."  Id.  Question sixty-three of the Jefferson-Pilot application asked: "Have you been involved in any discussion about the possible sale or assignment of this policy to a life settlement, viatical or other secondary market

provider." Id.  Schafer checked the box for "no."  Id.

The AIG life insurance application, as completed by Antonello and Schaffer, also sought $3 million in life insurance and listed Marietta Campbell as the owner of the policy and her estate as the sole beneficiary.  Haskvitz Aff. Ex. 7 at TC0089.  In response to a question about other pending applications, Schafer wrote: "Also applying Jefferson Pilot $3,000,000."  Id. at TC0090.

On July 13, 2005, Antonello's office faxed Marietta Campbell's Jefferson-Pilot life insurance application to Jefferson-Pilot's service office.  Haskvitz Aff. Ex. 6.  That same day or the next day, Antonello's office sent Marietta Campbell's AIG life insurance application to AIG's service office.  Anderson Aff. Ex. 55 at 4.  AIG performed its underwriting process and issued a $3 million policy to Marietta Campbell on August 17, 2005.  Id. at 5.  Jefferson-Pilot performed its underwriting process and issued a $3 million life insurance policy to Marietta Campbell on September 7, 2005.  Haskvitz Aff. Ex. 13 at JP000088.

Meanwhile, unbeknownst to Jefferson-Pilot and AIG, Antonello and Schafer submitted additional life insurance applications for Marietta Campbell.  Tom Campbell knew of the additional applications.  T. Campbell Dep. at 80.  By August 18, 2005, Antonello's office submitted Marietta Campbell's Allianz and Hartford life insurance applications,[3] both dated June 27, 2005, to Allianz's and Hartford's respective service offices.  Anderson Aff. Ex. 30; Haskvitz Aff. Ex. 9 at 4-5.  Marietta Campbell's Allianz and Hartford applications each sought a $2.5

---

[3] Hartford initially rejected the application because Antonello did not hold an appropriate appointment to solicit applications on behalf of Hartford.  Anderson Aff. Ex. 30.  Antonello obtained the necessary appointment and submitted a new application signed and dated by Marietta Campbell on September 29, 2005.  Anderson Aff. Ex. 31.

million death benefit.  Anderson Aff. Ex. 28 at 7, Ex. 29 at 4.  Neither the Allianz nor the

Hartford application fully disclosed the life insurance applications Marietta Campbell had

submitted to other insurers.  Anderson Aff. Exs. 28-29.  Allianz issued a $2.5 million life

insurance policy to Marietta Campbell on September 24, 2005.  Haskvitz Aff. Ex. 9 at 5.

Hartford issued a $2.5 million life insurance policy to Marietta Campbell on October 3, 2005.

Id. at 6.

In September 2005, Antonello submitted a fifth life insurance application, signed and

dated by Marietta Campbell on September 8, 2005, to Lincoln Benefit Life Insurance Company's

("Lincoln Benefit") service office.  Anderson Aff. Ex. 32.  Marietta Campbell's Lincoln Benefit

application sought $3 million in death benefits.  Id. at 2.  In response to a question about life

insurance applications pending with other companies, Lincoln Benefit application referred to the

AIG application but did not disclose the Jefferson-Pilot, Allianz, or Hartford applications.  Id.

Lincoln Benefit approved the application and issued a $3 million life insurance policy to

Marietta Campbell.  Anderson Aff. Ex. 9 at 5.  Thus, Marietta Campbell had five life insurance

policies providing a total of $14 million in death benefits.

### 2.    The Campbells and the Swansons Establish Limited Liability Companies to Fund the Life Insurance Policies

Meanwhile, in June 2005, Marietta Campbell, the Campbell brothers, and the Swanson

brothers decided, based on Antonello's advice, to establish limited liability companies to pay for

and receive the death benefits from Marietta Campbell's life insurance policies.  T. Campbell

Dep. at 59-60, 77-78.  Marietta Campbell agreed to whatever her sons proposed and was only

nominally involved in the decision making.  Id. at 23-24.  MCIG was established on August 11,

2005, to fund and benefit from Marietta Campbell's Jefferson-Pilot and AIG policies.  Anderson

Aff. Ex. 13.  An August 12, 2005, Member Control Agreement reflects that Marietta Campbell was initially the sole member of MCIG.  Id.  On August 13, 2005, MCIG issued 4,950 shares to Tom Campbell and 4,950 shares to Clay Swanson, leaving Marietta Campbell with 100 shares. Id. Exs. 11-12.  In exchange, Tom Campbell and Clay Swanson each agreed to contribute $276,870 to MCIG.  Id. Ex. 11.  On September 2, 2005, Tom Campbell deposited $138,435 into MCIG's bank account, and Blake Swanson, Clay Swanson, and Bart Swanson each contributed $46,145 into MCIG's bank account.  Id. Ex. 9 at 4.  Tom Campbell drafted a check for $114,990 from MCIG's bank account to pay the first Jefferson-Pilot life insurance premium.  Id. Ex. 18.

In August or September 2005, Marietta Campbell and Associates ("MCA"), a limited liability company, was established to invest in Marietta Campbell's Allianz, Hartford, and Lincoln Benefit policies.  The Swanson brothers contributed $173,000 and Antonello contributed $173,000 to MCA.  Id. Ex. 9 at 4.  The Campbell brothers did not contribute to MCA because they did not want to spend more money to purchase life insurance policies.  T. Campbell Dep. at 77.  Although the Campbells did not contribute to MCA, Marietta and Tom Campbell were given ten percent of MCA's shares.  Id. at 79.

### 3.    Marietta Campbell Dies; Antonello Changes the Beneficiary of the Jefferson-Pilot Policy to MCIG

On April 2, 2006, Marietta Campbell died from an intracerebral hematoma.  Anderson Aff. Ex. 54.  Although the Campbells, the Swansons, and Antonello had planned to designate MCIG and MCA as the beneficiaries of the respective life insurance policies those entities had funded, the necessary paperwork was not submitted before Marietta Campbell's sudden death. Antonello Dep. at 130.  However, Antonello had in his file a blank change of beneficiary form that Marietta Campbell had signed and dated on August 31, 2005.  Id.  After Marietta

Campbell's death, Antonello filled in the form to reflect that MCIG would be the new

beneficiary of the Jefferson-Pilot policy.  Anderson Aff. Ex. 19.  On April 3, 2006, Antonello

sent the completed form to Jefferson-Pilot by overnight mail.  Id. Ex. 49.  Unaware that Marietta

Campbell had died, a Jefferson-Pilot employee sent a fax to Marietta Campbell notifying her that

the date on the form was too old and that she needed to complete the field describing the new

beneficiary's relationship to the insured.  Id. Ex. 20.  Antonello altered the form to falsely reflect

that Marietta Campbell signed it on March 30, 2006, and to falsely reflect that Marietta

Campbell owned one-hundred percent of MCIG.  Id. Ex. 20.  On April 12, 2006, Jefferson-Pilot

approved the updated change-of-beneficiary request.  Id. Ex. 53.

### 4.    Jefferson-Pilot Performs a Contestable Claim Review and Rescinds Marietta Campbell's Policy

On May 1, 2006, Tom Campbell completed and submitted a form to Jefferson-Pilot

reflecting that Marietta Campbell had died and claiming death benefits for "Marietta Campbell

Ins. Grp. LLC / Tom Campbell."  Id. Ex. 54.  When an insured dies within two years of the

issuance of a life insurance policy, Jefferson-Pilot performs an investigation to determine

whether the insured provided accurate information on the application for life insurance.  Tart

Dep. (Anderson Aff. Ex. 7; King Aff. Ex. B) at 9-10.  Kenneth Elder ("Elder"), a Jefferson-Pilot

employee, investigated the facts surrounding Marietta Campbell's policy.  Elder Dep. (Haskvitz

Aff. Ex. 11; Anderson Aff. Ex. 4) at 26-27.  In mid-2006, the Minnesota Department of

Commerce contacted Jefferson-Pilot and other life insurance companies regarding other

instances in which Antonello knowingly submitted life insurance applications that did not

disclose that the applicant had other pending applications.  Id. at 25-26.  Elder then began

communicating with other life insurance companies and learned of Marietta Campbell's Allianz,

Hartford, and Lincoln Benefit life insurance policies.  Anderson Aff. Exs. 39, 41, 43.

On October 4, 2006, Elder and Lydia Tart ("Tart"), the senior manager of Jefferson-Pilot's Life Claims Department, participated in a conference call with employees from Hartford, AIG, Allianz, and Lincoln Benefit, who were also investigating Antonello's conduct and Marietta Campbell's life insurance policies.  Id. Ex. 43.  During the call, Allianz, Hartford, Lincoln Benefit, and AIG stated they would rescind their respective life insurance policies issued to Marietta Campbell based on her failure to fully disclose her pending life insurance applications.  Id. Ex. 43.  Tart and Elder stated that Jefferson-Pilot was still deciding whether to rescind Marietta Campbell's life insurance policy.  Id. Ex. 43.  Hartford, AIG, Allianz, and Lincoln Benefit also stated they would terminate their respective agent contracts with Antonello.  Id. Ex. 43.  Tart and Elder stated they would recommend that Jefferson-Pilot terminate Antonello's agent contract.  Id. Ex. 43.[4]

On October 6, 2006, Tart presented the findings of Elder's investigation to John Valickus ("Valickus") in Jefferson-Pilot's Underwriting Department.  Id. Ex. 36.  On October 19, 2006, Valickus wrote on an internal contestable claim review form that "[b]ased on true net worth of $2,000,000 (+), income, and total line to be placed of $14,000,000, we would have declined the coverage [for Marietta Campbell] noting there's no financial need for this amount."  Id. Ex. 36.  On October 27, 2006, an attorney in Jefferson-Pilot's legal department concluded that "[b]ased on [Valickus's] response, the misrepresentations were material.  They also appear to be made with the intent to deceive, since most of the apps. were taken the same day.  Under ND law, the

---

[4] On January 3, 2007, Jefferson-Pilot terminated Antonello's contract " as a result of material misrepresentation on applications regarding other insurance in force or pending at the time of application."  Anderson Aff. Ex. 24.

misreps are a valid basis for rescission."  Id. Ex. 36.

In a letter of November 16, 2006, Tart informed Tom Campbell that Jefferson-Pilot was rescinding the life insurance policy issued to Marietta Campbell.  King Aff. Ex. D.  Referring to Question Sixty of the Jefferson-Pilot application, Tart explained that "[t]he information regarding pending applications with other Companies was not fully disclosed on our application. Had we been advised of the pending applications . . . we would have declined the coverage."  Id. Ex. D.  Tart enclosed a check for $118,440, which represented the $114,990 initial premium plus $3,450 in interest.  Id. Ex. D.

In a letter of November 30, 2006, MCIG and Tom Campbell's former counsel disputed Jefferson-Pilot's decision to rescind Marietta Campbell's policy.  Anderson Aff. Ex. 38.  Noting that MCIG and Tom Campbell had voluntarily rescinded the Allianz, Hartford, and Lincoln Benefit policies, the letter asserted that Jefferson-Pilot's "unwillingness to pay on the basis of subsequent applications for policies which have been voluntarily rescinded is wholly untenable. Your agent may have known of issues in these policy applications, but the Campbells did not." Id. Ex. 38.  Jefferson-Pilot did not change its decision to rescind Marietta Campbell's life insurance policy.

**B.      Procedural History**

On February 27, 2007, Jefferson-Pilot filed a Complaint [Docket No. 1] against MCIG and Tom Campbell, as executor of Marietta Campbell's estate.  Jefferson-Pilot's Complaint sought a declaratory judgment that Marietta Campbell's life insurance policy is void and rescinded due to material misrepresentations in her application.  Jefferson-Pilot's action was docketed as Civil No. 07-1359 and was assigned to the undersigned Judge.  For convenience,

Civil No. 07-1359 will be referred to as the "Minnesota Action." Discovery in the Minnesota Action has been referred to Chief Magistrate Judge Erickson. On June 19, 2007, Magistrate Judge Erickson set an October 1, 2007, deadline for the parties to amend their pleadings. June 19, 2007, Order [Docket No. 10].

On February 26, 2007, MCIG served a Complaint [Civ. No. 07-4534 Docket No. 15-4] on Jefferson-Pilot by delivering the complaint to the North Dakota Department of Insurance for service on Jefferson-Pilot. Admission of Service [Civil No. 07-4534 Docket No. 15-5]. MCIG's complaint bears a North Dakota state court caption. However, MCIG never filed the complaint in state court. On March 16, 2007, Jefferson-Pilot removed the unfiled action to the United States District Court for the District of North Dakota. On October 26, 2007, United States District Judge Ralph R. Erickson granted Jefferson-Pilot's motion to transfer MCIG's action to this District. [Civ. No. 07-4534 Docket No. 16]. The action was docketed in this District as Civil No. 07-4534 and the matter was initially assigned to Judge Richard H. Kyle. For convenience, Civil No. 07-4534 is referred to as the "North Dakota Action."

On November 16, 2007, Jefferson-Pilot and MCIG submitted a joint letter requesting that the Minnesota Action and the North Dakota Action be assigned to the same judge because they "are mirror images of each other." Nov. 16, 2007, Letter [Docket No. 17]. Jefferson-Pilot and MCIG stated that if the cases were assigned to the same judge, Jefferson-Pilot and MCIG "will ask that the cases then be consolidated for discovery and trial." Id. On November 20, 2007, the North Dakota Action was reassigned to the undersigned Judge. Nov. 20, 2007, Order [Docket No. 18]. However, the parties did not request that the cases be consolidated.

Over the next two months, the parties litigated the Minnesota Action while the North

11

Dakota Action was dormant.  From November 20, 2007, to January 10, 2008, the parties did not

make any substantive filings in the North Dakota action.  Jefferson-Pilot had not filed an answer.

On January 10, 2008, Magistrate Judge Erickson ordered counsel for MCIG to notify Jefferson-

Pilot that it must file an answer or it would risk a default judgment.  January 10, 2008, Order

[Civ. No. 07-4534 Docket No. 20].  On January 11, 2008, Jefferson-Pilot filed an Answer [Civil

No. 07-4534 Docket No. 21] that did not assert any counterclaims.

Meanwhile, on January 2, 2008, Jefferson-Pilot moved to modify Magistrate Judge

Erickson's Pretrial Order in the Minnesota Action.  Jefferson-Pilot's Mot. to Modify Pretrial

Order [Docket No. 25].  On January 28, 2008, Judge Erickson extended the deadline for expert

disclosures but denied Jefferson-Pilot's request to extend the deadline for amending the

pleadings as untimely.  Jan. 28, 2008, Order [Docket No. 32].  Jefferson-Pilot apparently sought

leave to assert a claim that Marietta Campbell's policy was void *ab initio* because Marietta

Campbell applied for the insurance at the behest of parties who lacked an insurable interest in

her life.  Judge Erickson determined that Jefferson-Pilot had not shown good cause for extending

the deadline to amend the pleadings because Jefferson-Pilot had possession of discovery

materials supporting its lack-of-insurable-interest theory before the October 1, 2007, deadline.

Id. at 7-8.

Jefferson-Pilot did not appeal the denial of its motion to amend its Complaint in the

Minnesota Action.  Instead, on February 4, 2008, Jefferson-Pilot filed an Amended Answer With

Counterclaim [Civ. No. 07-4534 Docket No. 23] in the North Dakota Action.  Jefferson-Pilot's

counterclaim asserted the lack-of-insurable-interest theory that Judge Erickson had denied

Jefferson-Pilot leave to assert in the Minnesota Action.  Jefferson-Pilot's Am. Answer ¶¶ 43-44.

On March 4, 2008, MCIG and Tom Campbell filed a motion [Docket No. 58] to strike Jefferson-Pilot's Amended Answer in the North Dakota Action and to consolidate the Minnesota and North Dakota Actions.  MCIG argued that the Pretrial Order in the Minnesota Action should govern the North Dakota Action, and therefore Jefferson-Pilot's Amended Answer was untimely.  On April 10, 2008, Judge Erickson granted MCIG's motion to strike Jefferson-Pilot's Amended Answer and to consolidate the Minnesota and North Dakota Actions.

### III. DISCUSSION

**A.    Jefferson-Pilot's Appeal from the April 10, 2008, Order**

Jefferson-Pilot has timely objected to the April 10, 2008, Order striking Jefferson-Pilot's Amended Answer in the North Dakota Action.  Jefferson-Pilot does not oppose any other portion of the April 10, 2008, Order.  If a party objects to a magistrate judge's order on a non-dispositive pretrial matter, the district judge must consider the objections "and modify or set aside any part of the order that is clearly erroneous or contrary to law."  Fed. R. Civ. P. 72(a).

Judge Erickson struck Jefferson-Pilot's Amended Answer in the North Dakota Action after finding that Jefferson-Pilot was circumventing his January 28, 2008, Order in the Minnesota Action denying Jefferson-Pilot leave to assert new claims.  Jefferson-Pilot argues this decision was clearly erroneous and contrary to law because it is inconsistent with Federal Rule of Civil Procedure 15(a)(1)(B).  Rule 15(a)(1)(B) provides that "[a] party may amend its pleading once as a matter of course within 20 days after serving the pleading if a responsive pleading is not allowed and the action is not yet on the trial calendar."  Because Jefferson-Pilot electronically filed its January 11, 2008, Answer in the North Dakota Action, three additional days are added to the twenty-day period established by Rule 15(a)(1)(B).  Fed. R. Civ. P. 6(e).

13

Therefore, under normal circumstances, Jefferson-Pilot's February 4, 2008, Amended Answer would be accepted "as a matter of course."

However, the Court agrees with Judge Erickson that Jefferson-Pilot's Amended Answer in the North Dakota Action should be stricken.  Jefferson-Pilot's Amended Answer in the North Dakota Action is an attempt to circumvent the January 28, 2008, Order denying Jefferson-Pilot leave to amend its Complaint in the Minnesota Action.  Jefferson-Pilot and MCIG represented to this Court in November 2007 that once the cases were before the same judge, the parties would move to consolidate the actions for discovery and trial.  Although the parties neglected to move for consolidation, it is clear that from November 20, 2007, until February 4, 2008, the two actions were substantively identical and the parties were litigating the claims in both actions following the pretrial scheduling order in the Minnesota Action.  Based on this Court's inherent power to manage its docket, M.S. v. Wermers, 557 F.2d 170, 175 (8th Cir. 1977), and on the parties' representation that they would move to consolidate the two actions once they were before the same judge, the Court finds that the two actions should have been consolidated soon after the November 20, 2007, Order reassigning the North Dakota Action.  Therefore, Judge Erickson correctly determined that the pretrial scheduling order in the Minnesota Action prevented Jefferson-Pilot from asserting new counterclaims in the "mirror image" North Dakota action.  Further, the Court agrees with Judge Erickson's determination that Jefferson-Pilot failed to demonstrate good cause for extending the deadline for amending the pleadings.  Accordingly, Jefferson-Pilot's objection is overruled.

**B.      MCIG and Tom Campbell's Motion for Summary Judgment**

**1.      Standard of Review**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig, 54 F.3d at 470.  The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**2.      Alleged Misrepresentations**

**a.      "Pending Applications"**

The parties agree that North Dakota law applies.  Under North Dakota law, an insurer can rescind an insurance policy if the insured made a material misrepresentation on the insurance application.  N.D. Cent. Code § 26.1-29-25.  Jefferson-Pilot argues Marietta Campbell's life insurance application included a material misrepresentation because she failed to disclose the Allianz and Hartford applications in response to question sixty, which inquired about "any applications pending with any other life insurance company now."  The parties dispute the meaning of the term "pending."  Jefferson-Pilot argues an application is pending when a proposed insured signs the application and submits it to an insurance agent with the intent that

the insurance agent later complete and submit the application to the insurance company's service

office.  Jefferson-Pilot's Mem. of Law in Opp'n to Summ. J. [Docket 73] at 24.  Thus, under

Jefferson-Pilot's definition, Marietta Campbell's four life insurance applications were "pending"

on June 27, 2005, if Marietta Campbell intended that Antonello would complete and submit

them to the life insurance companies.  Jefferson-Pilot argues there is a genuine issue of material

fact regarding Marietta Campbell's intent and therefore there is a genuine issue of material fact

regarding whether Marietta Campbell's answer to question sixty was a material

misrepresentation.

     MCIG and Tom Campbell argue that a life insurance application is "pending" if it is

"awaiting decision."  MCIG and Tom Campbell's Mem. in Supp. of Summ. J. [Docket No. 66] at

13.  Under this definition, the Jefferson-Pilot and AIG applications did not become "pending"

until July 13, 2005, when Antonello submitted them to Jefferson-Pilot's and AIG's respective

service offices.  The Allianz and Hartford applications were not pending on July 13, 2005,

because Antonello had not submitted them.  Thus, MCIG and Tom Campbell argue that when

Marietta Campbell's Jefferson-Pilot application was submitted to Jefferson-Pilot's service office

on July 13, 2005, the application fully disclosed all "applications pending with any other life

insurance company now."  Alternatively, MCIG and Tom Campbell assert that if the term

"pending" in question sixty is ambiguous, it should be construed against Jefferson-Pilot because

Jefferson-Pilot drafted the application.  See Martin v. Allianz Life Ins. Co. of N. Am., 573

N.W.2d 823, 825 (N.D. 1998) (noting that "insurance policies are contracts of adhesion, and we

resolve ambiguities in favor of the insured").

     Although the parties dispute the meaning of "pending" in question sixty, the Court finds

it is unnecessary to define the precise meaning of the term.  Jefferson-Pilot argues that "if other, undisclosed policies were submitted during Jefferson-Pilot's underwriting process, those applications should have been disclosed."  Jefferson-Pilot's Mem. in Opp'n to Summ. J at 24 n.9.  Although Jefferson-Pilot did not cite any legal authority for this proposition, it is well settled under the common law doctrine of *uberrimae fidei* that "as a matter of utmost good faith and fair dealing, if an applicant for insurance discovers facts that make portions of his application no longer true while the company deliberates, he must make full disclosure of the newly discovered facts."  PHL Variable Ins. Co. v. Fulbright McNeill, Inc., 519 F.3d 825, 829 (8th Cir. 2008).  Federal courts apply the doctrine of *uberrimae fidei* in the absence of state law to the contrary.  Id. at 829 n.3 (citing Stipcich v. Metro. Life Ins. Co., 277 U.S. 311, 316 (1928)).  "The necessity for complying with [the duty of utmost good faith] is not dispensed with by the failure of the insurer to stipulate in the policy for such disclosure."  Stipcich, 277 U.S. at 318.

There do not appear to be any North Dakota statutes or case law inconsistent with the doctrine of *uberrimae fidei*.  Therefore, the doctrine applies, and Marietta Campbell's representations in her Jefferson-Pilot application were continuing until Jefferson-Pilot issued the policy on September 7, 2005.  Accordingly, Marietta Campbell was required to update her answer to question sixty of the Jefferson-Pilot application if other life insurance applications became pending while Jefferson-Pilot was considering her application.  Under MCIG and Tom Campbell's definition of "pending," the Allianz and Hartford applications were "pending" on August 18, 2005, when Antonello submitted them to Allianz's and Hartford's respective service offices.  Therefore, Marietta Campbell had a duty of utmost good faith to disclose the Allianz and Hartford applications to Jefferson-Pilot.  Marietta Campbell's failure to do so was a material

17

misrepresentation.[5]  Consequently, Jefferson-Pilot can assert the misrepresentation as a basis for rescinding Marietta Campbell's policy and denying MCIG and Tom Campbell's claim for death benefits.

   **b. Discussions Regarding Selling the Jefferson-Pilot Policy to a Life Settlement, Viatical, or Other Secondary Market Provider**

   Jefferson-Pilot also argues that the answer to question sixty-three in Marietta Campbell's Jefferson-Pilot application was a material misrepresentation.  Question sixty-three asked: "Have you been involved in any discussion about the possible sale of this policy to a life settlement, viatical or other secondary market provider?"  Haskvitz Aff. Ex. 6. at JP000005.  Marietta Campbell's application answer was "no."  Id.

   The terms "life settlement, viatical or other secondary market provider" are not defined in Jefferson-Pilot's application form, and the parties have not provided the Court with definitions of these terms.  The Eleventh Circuit has described viatical settlements as follows:

> A viatical settlement is a transaction in which a terminally ill insured sells the benefits of his life insurance policy to a third party in return for a lump-sum cash payment equal to a percentage of the policy's face value.  The purchaser of the viatical settlement realizes a profit if, when the insured dies, the policy benefits paid are greater than the purchase price, adjusted for time value.  Thus, in purchasing a viatical settlement, it is of paramount importance that an accurate determination be made of the insured's expected date of death.  If the insured lives longer than expected, the purchaser of the policy will realize a reduced return, or may lose money on the investment.

S.E.C. v. Mut. Benefits Corp., 408 F.3d 737, 738 (11th Cir. 2005).  Thus a viatical settlement provider buys life insurance policies from terminally ill insureds.  A life settlement provider buys life insurance policies from insureds who are not terminally ill.  S.E.C. v. Mut. Benefits

---

   [5] The parties do not dispute that a misrepresentation in response to question sixty would be a material misrepresentation.

Corp., 323 F. Supp. 2d 1337, 1338 n.2 (S.D. Fla. 2004).

In support of its argument that Marietta Campbell should have answered "yes" to question sixty-three, Jefferson-Pilot cites the following colloquy from Tom Campbell's deposition:

> Q:    Did you and Clay [Swanson] intend to sell any of your mother's life insurance policies?
>
> A:    We discussed it but didn't really know what we were going to do.
>
> Q:    And nothing final had been resolved and your mother then died?
>
> A:    Correct.

T. Campbell Dep. at 93.  However, this testimony does not demonstrate a genuine issue of material fact because Tom Campbell was not asked *when* he had the discussions about selling Marietta Campbell's policies.  It appears from the context of the questioning that the discussions between Tom Campbell and Clay Swanson occurred after Jefferson-Pilot issued a life insurance policy to Marietta Campbell.  Jefferson-Pilot has not presented sufficient evidence that the discussions occurred before it issued Marietta Campbell's life insurance policy.  Therefore, Jefferson-Pilot cannot rely on Marietta Campbell's answer to question sixty-three as a basis for rescinding her policy.

**3.      Agency**

MCIG and Tom Campbell argue that even if Marietta Campbell's answer to question sixty about pending applications was a misrepresentation, knowledge of the misrepresentation is imputed to Jefferson-Pilot because Antonello, Jefferson-Pilot's agent, and Schafer, who acted under Antonello's supervision, supplied the answers to Marietta Campbell's Jefferson-Pilot application.  The parties agree that under North Dakota law, an insurance agent's knowledge is

19

imputed to the insurer unless the insured and the insurance agent acted in bad faith or colluded against the insurer.  See Leisen v. St. Paul Fire & Marine Ins. Co., 127 N.W. 837, 844 (N.D. 1910) (noting that an insured cannot benefit from the imputation rule "[i]f there is any collusion between him and the insurance company's agent").

Jefferson-Pilot argues there is a genuine issue of material fact regarding whether the imputation rule applies.  Jefferson-Pilot first contends there is a genuine issue of material fact regarding whether Antonello was its agent.  Jefferson-Pilot asserts that Antonello violated his agency contract by not witnessing Marietta Campbell sign her application, soliciting investors for interests in pools of life insurance policies, and omitting material information on Marietta Campbell's application.  Jefferson-Pilot's Mem. in Opp'n to Summ. J. at 31  Jefferson-Pilot's attempt to disclaim its principal-agency relationship with Antonello is without merit.  Under North Dakota law,

> An insurance producer who sells, solicits, or negotiates an application for insurance of any kind is, in any controversy between the insured or the insured's beneficiary and the insurer, regarded as representing the insurer and not the insured or the insured's beneficiary.  An insurance producer may not act as an agent of an insurer unless the insurance producer becomes an appointed insurance producer of that insurer.  This section does not affect the apparent authority of an agent.

N.D. Cent. Code § 26.01-26-06.  It is undisputed that Antonello held the necessary appointment to act as Jefferson-Pilot's agent in soliciting applications.  Therefore, Jefferson-Pilot has no basis to argue that Antonello lacked actual or apparent authority to act as its agent.

Jefferson-Pilot also argues there is a genuine issue of material fact regarding whether Antonello and Marietta Campbell colluded against Jefferson-Pilot.  Jefferson-Pilot asserts that "Mr. Antonello was not simply an agent of Jefferson-Pilot dealing at arms-length with [Marietta

Campbell]; he was actively participating on the behalf of the Swansons and the Campbells to secure the [Jefferson-Pilot] Policy, and other life insurance policies, pursuant to joint venture investments in such insurance policies." Jefferson-Pilot's Mem. in Opp'n to Summ. J. at 34. In particular, Jefferson-Pilot refers to Antonello's $173,000 contribution to MCA to help fund Marietta Campbell's Allianz, Hartford, and Lincoln Benefit policies.

The Court finds there is a genuine issue of material fact as to whether the Campbells colluded with Antonello in failing to disclose the Allianz and Hartford applications to Jefferson-Pilot. A jury could draw two opposing inferences from the facts. On the one hand, a jury could infer that the Campbells acted in good faith and relied on Antonello to notify Jefferson-Pilot in August 2005 that Marietta Campbell's answer to question sixty was no longer accurate. On the other hand, a jury could infer collusion between the Campbells and Antonello based on the fact that the concealment of pending life insurance applications allowed the Campbells, the Swansons, and Antonello to invest in, and potentially profit from, life insurance policies that would not otherwise have been issued. Because genuine issues of material fact exist, MCIG and Tom Campbell's Motion for Summary Judgment is denied.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.   Jefferson-Pilot's Objection [Civ. No. 07-1359 Docket No. 80; Civ. No. 07-4534

   Docket No. 55] to Chief Magistrate Judge Raymond L. Erickson's April 10, 2008,

   Order [Civ. No. 07-1359 Docket No. 75; Civ. No. 07-4534 Docket No. 54] is

   **OVERRULED**;

2.   Marietta Campbell Insurance Group, LLC and Tom Campbell's Motion for

   Summary Judgment [Civ. No. 07-1359 Docket No. 64; Civ. No. 07-4534 Docket

   No. 40] is **DENIED**; and

3.   The Clerk is directed to consolidate Civil Nos. 07-1359 and 07-4534 pursuant to

   Chief Magistrate Judge Erickson's April 10, 2008, Order.  The consolidated

   actions shall proceed under Civil No. 07-1359.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  August 12, 2008.